841 F.2d 1126
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Derek A. FARMER, Plaintiff-Appellant,
v.
George F. DENTON; Thomas J. Stickrath; and Ronald C.
Marshall, Defendants-Appellees.
 No. 85-3993.
 United States Court of Appeals, Sixth Circuit.
 March 8, 1988.
 
 Before ENGEL, CORNELIA G. KENNEDY and KRUPANSKY, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Derek A. Farmer, a prisoner at the Southern Ohio Correctional Facility ("SOCF"), appeals summary judgment granted to defendants, various prison officials, in his section 1983 suit. Defendants are the former director of the Ohio Department of Rehabilitation and Corrections, the former Chief Inspector of the Department, and the former Superintendent of SOCF.[1] Plaintiff, then proceeding pro se,[2] alleged that there was inadequate medical care provided to inmates in the Security Control, Disciplinary Control, and Administrative Control cell blocks, collectively referred to as the "uptight" blocks. Plaintiff attempted to have a class certified consisting of those inmates, but, as discussed below, this issue was not decided. A United States Magistrate suggested that plaintiff's claims had previously been adjudicated and that he was barred by doctrines of res judicata from litigating the issue of medical care at SOCF again, either individually or by class action. The District Court adopted the Report and Recommendation of the Magistrate. Because the Magistrate's determination that all of plaintiff's claims were barred by res judicata is incorrect, and because plaintiff's complaint liberally construed states a claim upon which relief may be granted, this case is remanded to the District Court. The District Court should also determine whether plaintiff can proceed by way of a class action.
 
 
 2
 The Magistrate held that plaintiff had failed to state a claim upon which relief can be granted "[u]pon a thorough review of the pleadings," Joint Appendix at 242.[3] Since the plaintiff's contentions were not met by contrary evidence in affidavit or other acceptable form, the Magistrate's decision was based on the pleadings and the published decision in an earlier case dealing with medical services at SOCF, Chapman v. Rhodes, 434 F.Supp. 1007 (S.D.Ohio 1977), rev'd., 452 U.S. 337 (1981). Plaintiff was a member of the class at the time that case was decided.
 
 
 3
 The Magistrate's conclusion was based primarily on the view that plaintiff's claim was barred by res judicata, as discussed below, but he also found that "[t]he complaint is devoid of specific instances of medical indifference and merely alleges that 'there are plenty of documented facts and proof in the inmate class prison files to support the claims herein,' " Joint Appendix at 245, (quoting the complaint), and that "plaintiff has done no more than allege that he is dissatisfied with the medical treatment at SOCF," id. at 246.
 
 
 4
 The complaint, however, sets forth with sufficient specificity allegations that, if true, would constitute an actionable violation of the rights of plaintiff and others. For example, plaintiff alleges that:
 
 
 5
 Plaintiffs in the restricted blocks are being denied medical treatment ... by defendants' failure to provide access to medical treatment in emergency situations. Plaintiff Farmer has been caused to suffer bleeding ulcers, anxiety, mental and physical frustrations due to defendants' failure to provide him with medicine that a institutional doctor ordered and other serious illnesses, other members of this class has been caused to suffer, to wit: eye infections, heart ailments, physical and mental injuries, suicides, suicidal attempts, periods without presrcibed [sic] medication all due to defendants' failure to provide medical attention in the restricted blocks....
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 Defendants actions has caused a wanton infliction of unnecessary pain, deliberate indifference to serious medical needs and caused plaintiffs to suffer unnecessary and needless pain by their repeated denial of medical attention and access to medical facilities when releif [sic] is available.
 
 
 9
 Joint Appendix at 10. Plaintiff claims that there have been instances when there has been no sick call in the "uptight" units for an entire month at a time, that inmates are denied emergency treatment, and that plaintiff and others have been denied medicine ordered by a prison doctor. As the Supreme Court explained:
 
 
 10
 [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoners' needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under Sec. 1983.
 
 
 11
 Estelle v. Gamble, 429 U.S. 97, 104-105 (1976) [citation and footnotes omitted].
 
 
 12
 Of course, plaintiff has not proven that these allegations are true. But he need not prove his case in order to state a claim or to survive a motion for summary judgment or to dismiss.
 
 
 13
 On this record, it was error for the Magistrate to recommend and for the District Court to grant summary judgment to defendants or to dismiss on the basis that plaintiff had failed to state a claim.
 
 
 14
 Res Judicata: The Magistrate held that the issue of the adequacy of medical care at SOCF had been litigated and decided in a class action suit while the plaintiff was a member of the class and that he is therefore barred by doctrines of res judicata from relitigating these issues. A decade ago, Chapman v. Rhodes, 434 F.Supp. at 1007 decided a class action suit that claimed that the double-celling of prisoners at SOCF violated their constitutional rights. The District Court held that double-celling, at least in the particular circumstances of SOCF, was unconstitutional, but the Supreme Court reversed. The factual findings of the District Court were not disturbed. The District Court found that although there were some problems with medical care, there was no violation of the constitution.
 
 
 15
 The Magistrate found that the complaint alleged no change of circumstances at SOCF. But, for example, the District Court in Chapman found that sick call was held in the "uptight" blocks once a week, while, as discussed, the complaint alleges that it is sometimes not held for an entire month. Plaintiff's allegations regarding the withholding of prescriptions and the denial of emergency treatment also clearly set forth a claim that the conditions that Chapman accepted have deteriorated. These practices were not adjudicated in Chapman; indeed plaintiff "will stipulate that if the medical standards and practices that he complains about now are identical to those approved ... in the Chapman case, he is barred from re-litigating" them, Plaintiff's Reply Brief at 6.
 
 
 16
 One aspect of plaintiff's claims is clearly barred by the decision in Chapman. The District Court in Chapman was aware that sick call was held more frequently for the general population of the prison than for the inmates of the "uptight" block, but nonetheless said that medical care was adequate. Therefore, insofar as plaintiff complains that the inequality in treatment between the "uptight" and general inmates is itself a violation of constitutional rights, his claim is barred. To the extent other practices upheld in Chapman are attached, he is also barred. However, Chapman did not decide whether those practices are being properly carried out in 1982.
 
 
 17
 The District Court, in an order dated September 28, 1983, initially dismissed the complaint on the basis that plaintiff, who is not authorized to practice law, may not represent other persons. That judgment was vacated by this Court, and the action remanded for further proceedings in compliance with Tingler v. Marshall, 716 F.2d 1109 (6th Cir.1983) which required various procedural safeguards before a sua sponte dismissal of a civil rights complaint. The District Court made no other findings and no ruling concerning the issue of class certification. So far as the record indicates, plaintiff's motion for class certification was never decided. The Magistrate's Order of December 18, 1984, disposing of several motions made by both parties, states that plaintiff's motion for class certification, identified as document 16, remains pending. The docket sheet does not indicate that this motion was ruled on. The Magistrate did not himself consider this issue, although the question of res judicata, on which the Magistrate spent most of his Report and Recommendation, is intertwined with the issue of class certification. This is because there are some members of the purported class who cannot be bound by Chapman, since they were not in SOCF at that time.[4] However, the Magistrate on recommending dismissal treated the suit as an individual action by plaintiff.
 
 
 18
 Defendants argue that plaintiff has failed to meet the other requirements of Rule 23 of the Federal Rules of Civil Procedure. Since the District Court made no findings on any other aspect of the issue of class certification, and its findings as to the representation aspect were part of an order vacated by this Court, the District Court, rather than this Court, should decide this issue in the first instance.
 
 
 19
 Qualified Immunity and the Identity of Defendants: The state raises two related arguments concerning the identity of the named defendants and "good faith" immunity. Although these issues were not decided below, there are circumstances where this Court might, in the first instance, order the dismissal of a defendant on the basis of qualified immunity because that defendant should not be required even to defend a suit. This is not one of those circumstances.
 
 
 20
 The state argues, correctly, that respondeat superior cannot be a basis for liability under section 1983. But Monell v. New York City Department of Social Services, 436 U.S. 658 (1978) allows liability to be based on the fact that a defendant is responsible for a "policy or custom." Plaintiff's complaint specifically says that defendants "are responsible for the constitutional violations set forth herein, infra, because of policy promulgated by defendants, because of lack of policy promulgated and the establishment of custom in violating the plaintiffs constitutional rights," Joint Appendix at 9, p B. The complaint alleges that plaintiff filed a grievance with defendant Stickrath, described as the "Chief Inspector, Ohio Dept. of Reh.Corr.", who allegedly told him the grievance was meritorious but then did not act upon it. It further alleges that "[d]efendant Denton as Director is responsible for the safety and the promulgation of policy governing medical facilities," and was made aware of the violations alleged, id. at 10, p K.
 
 
 21
 There is no indication that plaintiff's case against these defendants depends on the doctrine of respondeat superior. It appears that, given the lack of discovery, and the fact that he was then proceeding without an attorney, plaintiff adequately alleged a custom or policy, as required by Monell. It may be that these defendants are not legally responsible for the policies alleged, and that others ought to have been sued instead. But there is nothing in the record to indicate this.
 
 
 22
 For much the same reasons, the state's argument that these defendants are entitled to "good faith" immunity is clearly premature. As noted above, plaintiff claims that defendants Stickrath and Denton were aware of the conditions he alleges, and indeed that defendant Stickrath admitted that plaintiff's complaint had merit. He also states that defendant Marshall was made aware of these conditions in a letter from the ACLU. Plaintiff has therefore alleged actual knowledge by these defendants of conditions which, if true, would be violations of the constitutional rights of inmates to medical care under Estelle v. Gamble. As plaintiff concedes, it is possible that some of the defendants are indeed entitled to qualified immunity, but there is no way for this Court to decide this issue on this record.
 
 
 23
 Defendants' immunity claim depends on whether defendants violated clearly established constitutional rights of which a reasonable person would have known, Harlow v. Fitzgerald, 457 U.S. 800 (1982). Plaintiff has alleged they did, and it is impossible for this Court to determine whether this allegation is factually true. Defendants argue that the adjudication in Chapman allows sick call to be held only once a week and therefore they could not have violated a clearly established constitutional right. If that was all that plaintiff alleged, we would agree. However, it is clear that plaintiff is claiming, at least in part, that the standards accepted in Chapman are being knowingly violated. If this is true, it would violate the clearly established constitutional rights of prison inmates, Estelle, 429 U.S. at 104-105.
 
 
 24
 The judgment of the District Court is reversed, and the case remanded for proceedings consistent with this opinion.
 
 
 
 [1]
 The superintendent died during the pendency of this suit and plaintiff moved to substitute the new superintendent
 
 
 [2]
 This Court approved plaintiff's motion for counsel on appeal
 
 
 [3]
 There is some confusion about whether the Magistrate recommended granting a motion for summary judgment, or a dismissal for failure to state a claim. Since res judicata, the primary basis of the Magistrate's decision, is a bar to a claim, it properly can be used only to resolve a motion for summary judgment, and not a motion to dismiss for failure to state a claim. Although defendants' motion was denominated a motion to dismiss, the Magistrate referred to the motion as one for "summary judgment," and this is probably the way the motion should have been construed. Nevertheless, as discussed in the text, the Magistrate's analysis contains elements that properly belong in the consideration of a motion to dismiss
 
 
 [4]
 This may be a reason why plaintiff's claims are not typical of the class